907 A.2d 363

Douglas **FRANKEL**, et al.

v.

Joy **FRIOLO**.

No. 0254, Sept. Term, 2005.

Court of Special Appeals of Maryland.

Sept. 14, 2006.

Matthew J. Focht (Gerard J. Emig, Gleason, Flynn, Emig & Fogleman, Chtd., on brief), Rockville, for appellant.

Leizer Z. Goldsmith, Washington, DC, for appellee.

Panel SALMON, KRAUSER and SHARER, JJ.

SHARER, J.

Once again the attorneys' fee dispute between Douglas Frankel, M.D. and the Maryland Virginia Med Trauma Group, appellants/cross-appellees (collectively "Frankel"), and a former employee, Joy Friolo, appellee/cross-appellant, is before us. In this current appeal and cross-appeal we are asked to determine whether, on remand, the Circuit Court for Montgomery County properly awarded attorney's fees to Friolo, in accordance with the direction of the Court of Appeals in *Friolo v. Frankel,* 373 Md. 501, 819 A.2d 354 (2003)("*Friolo I* "). Moreover, we take up an issue of apparent first impression: whether counsel is entitled to be awarded fees for post-judgment litigation in which the only complaint is counsel's

dissatisfaction with the fee originally awarded by the circuit court.

Frankel challenges the circuit court's fee award and presents several issues for our review, which we have distilled into:[1]

Whether the circuit court's attorneys' fee award complies with the lodestar analysis set forth in *Friolo I.*

Friolo's cross-appeal presents one issue for our review which, as slightly rephrased, is:

Whether the circuit court abused its discretion by failing to award Friolo attorneys' fees for post-trial, appellate, and post-remand services.

For the reasons that follow, we shall vacate the circuit court's award and remand for proceedings consistent with this opinion.

## BACKGROUND

To provide perspective for our discussion, we recount briefly the facts giving rise to the original litigation between the parties.[2]

Friolo was employed by Frankel in February, 1998, as a medical biller, responsible for both billing and collection. Her employment was terminated by Frankel on April 4, 1999, based upon allegations that she had treated patients rudely. In her complaint, Friolo averred that she accepted an offer made by Frankel to all employees, of a five percent ownership

---

1. In their brief, appellants framed the issues as follows:
   1. Whether the attorneys' fee awarded to Friolo on remand is excessive on its face.
   2. Whether the attorneys' fee awarded to Friolo on remand violates Maryland Rule of Professional Responsibility 1.5.
   3. Whether the trial court failed to apply the factors of a lodestar analysis tending to mitigate a fee award.
   4. Whether the attorneys' fee awarded to Friolo on remand is impermissibly vague.

2. We summarize the facts from the detailed recitation in *Friolo I, supra,* 373 Md. at 505–509, 819 A.2d 354.

interest in the practice if the practice was worth one million dollars by the end of 1999. The goal was to develop and expand the practice, make it more profitable, and sell it by the end of 2004. Friolo alleged that she also was to have received a percentage of the sales price.

When she filed suit following her discharge, Friolo alleged that she worked considerable overtime hours without overtime compensation. She also claimed an agreement by which she was to receive, but did not receive, on a monthly basis, a percentage of collections. Friolo filed a ten-count complaint, sounding in: (1) breach of contract; (2) breach of an implied contract; (3) unjust enrichment; (4) fraudulent inducement; (5) violation of the Maryland Wage Payment and Collection Law, Lab. & Empl. ("LE") §§ 3–503 and 3–505; and (6) violation of the Maryland Wage and Hour Law, LE §§ 3–415 and 3–420. Counts 7 through 10 were brought on behalf of Friolo's husband, Victor Salazar, who alleged that he, too, worked for Frankel and was promised benefits similar to those promised to Friolo. Lastly, their complaint sought punitive damages.

Ultimately, all of Salazar's claims were dismissed for lack of sufficient evidence. In the end, the only claims submitted to the jury were counts (1), (5), and (6). Friolo had claimed bonuses in the amount of $26,415, of which she had been paid $19,574, leaving an unpaid balance of $6,841. She also claimed entitlement to $5,237 in overtime pay. The jury returned a verdict in Friolo's favor in the amount of $11,778, representing $6,841 in bonuses and $4,937 in overtime pay. Frankel satisfied the $11,778.85 money judgment, but not the post-judgment interest, on or about October 28, 2002.[3]

Friolo sought attorneys' fees under LE §§ 3–427(d) and 3–507.1(b) which provide:

### § 3–427.  Action against employer

*     *     *

---

[3]. Frankel's motion for a new trial under Maryland Rule 2–533, filed July 31, 2001, was denied by the circuit court on October 29, 2001.

(d) If a court determines that an employee is entitled to recovery in an action under this section, the court may allow against the employer reasonable counsel fees and other costs.

## § 3–507.1. Recovery of unpaid wages

\* \* \*

(b) If, in an action under subsection (a) of this section, a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs.

On July 18, 2001, Friolo filed her first request for fees and costs, $55,012.50 in attorneys' fees, which were calculated according to the lodestar approach and reflected a 10% deduction to account for the fact that not all of Friolo's claims were successful. Frankel opposed this motion.

In a supplemental filing, on July 31, 2001, Friolo's counsel raised the requested amount of fees to $57,059.55. Later, on November 7, 2001, Friolo filed a second supplement to her motion for attorneys' fees, requesting $69,637.50.

After hearing argument, and having considered memoranda filed by both parties, the circuit court:

concluded first that attorney fee awards need to be "appropriate and fair," even when "punitive." It then noted that, under the lodestar analysis, two of the factors the court must consider are the novelty and difficulty of the litigation, but it made no finding with respect to either factor. It observed that the jury had returned a verdict of $11,778, which the court said was not inappropriate, and then stated:

"What the Court is going to do by way of award is considering the [lodestar] language and the record in this matter, I deem it appropriate to—this case is interesting in looking at the computations awarding 40 percent of the judgment plus the $1,500 in court costs so that comes out

to $4,712.00 plus $1,500.00–$6,212.00 is the counsel fees and costs."

*Friolo I, supra,* 373 Md. at 510–11, 819 A.2d 354.

The circuit court's February 28, 2002 order granted Friolo's motion and directed Frankel to pay to Friolo or her counsel $4,711.00, for statutory attorneys' fees, plus $1,552.00 in costs. The court based the attorneys' fee on 40 percent of the amount of judgment. On March 26, 2002, Friolo appealed to this Court, "complaining, in essence, that the trial court erred in failing to calculate the fees in accordance with the lodestar approach, despite what she regard[ed] as her 'high degree of success before the court.'" *Id.* at 511, 819 A.2d 354.

On October 15, 2002, the Court of Appeals granted certiorari before any proceedings in this Court.

### Proceedings Before the Court of Appeals

In its opinion filed on March 17, 2003, the Court of Appeals held that

in actions under fee-shifting statutes, including the two at issue here—Maryland Code, §§ 3–427 and 3–507.1 of the Labor and Employment Article (LE)—the lodestar approach is ordinarily the appropriate one to use in determining a reasonable counsel fee. We stress, however, that the approach we approve is broader than simply hours spent times hourly rate but also includes careful consideration of appropriate adjustments to that product, which, in almost all instances, will be case-specific. *Under that approach, it is necessarily incumbent upon the trial judge to give a clear explanation of the factors he or she employed in arriving at the end result.*

*Id.* at 504–05, 819 A.2d 354 (emphasis added).

The Court concluded that the circuit court did not provide a clear justification for how it arrived at its determination of attorneys' fees, and remanded for "a further proceeding and a better explanation." *Id.* at 505, 819 A.2d 354.

### Proceedings on Remand

On remand to the circuit court, Friolo filed yet a third supplemental petition for attorneys' fees, on June 26, 2003, this time seeking a total of $127,810 in fees, to account for additional fees generated by the appeal. Frankel renewed his opposition to Friolo's petition.

A hearing, consisting only of argument on the already developed record, was held on Friolo's motion for attorneys' fees and costs, as well as the supplemental filings, on July 15, 2003. After taking the matter under advisement, the circuit court, on October 21, 2003, issued an opinion and order awarding attorneys' fees in the amount of $65,348.

On October 23, 2003, Frankel filed a motion to alter or amend the fee award and a motion to stay enforcement of the judgment. Six days later Friolo moved to alter or amend the fee award judgment on the grounds that the court improperly denied fees for appellate and post-appellate services. The circuit court denied all outstanding post-trial motions on December 22, 2003. On March 18, 2005, judgment was entered in favor of Friolo in the amount of $65,348.

Frankel and Friolo noted their timely appeals to this Court on April 5, 2005, and April 12, 2005, respectively.

### STANDARD of REVIEW

The decision whether to allow attorneys' fees is discretionary and such "discretion is to be exercised liberally in favor of allowing a fee." *Friolo I, supra,* 373 Md. at 512, 819 A.2d 354. Where a trial court awards attorneys' fees under a fee-shifting statute, the lodestar approach must be utilized. *Id.* The setting of attorneys' fees under the lodestar approach is largely discretionary. *Id.* If, however, "the record does not support a conclusion that the trial court *actually used* that approach, there would be an error of law." *Id.* (emphasis added). Upon finding that an error of law has occurred, we must remand to the trial court "for a further proceeding, in which the court can apply the lodestar approach and determine a reasonable fee." *Id.*

*Whether the circuit court's attorneys' fee award complies with the lodestar analysis set forth in Friolo I.*

In *Friolo I* the Court of Appeals adopted the lodestar approach for determining reasonable attorneys' fees under Maryland's fee-shifting statutes. *See Garcia v. Foulger Pratt Dev., Inc.*, 155 Md.App. 634, 672–73, 845 A.2d 16 (2003). The Court stressed, however, that this approach "is broader than simply hours spent times hourly rate but also includes *careful consideration of appropriate adjustments* to that product, which, in almost all instances, will be case-specific." *Friolo I, supra,* 373 Md. at 505, 819 A.2d 354 (emphasis added). Due to the case-specific nature of this approach, the Court emphasized that "it is necessarily incumbent upon the trial judge to give a *clear explanation of the factors* he or she employed in arriving at the end result." *Id.* (emphasis added). Such findings are imperative "so that the parties and any reviewing appellate court can follow the reasoning and test the validity of the findings." *Id.* at 529, 819 A.2d 354.

Following remand to the circuit court, Friolo supplemented her petition for attorneys' fees, seeking an additional $58,172.50 to account for the work done on the first appeal. This amount, together with the $69,637.50 for trial work sought in Friolo's second supplement, brought the total request for attorneys' fees to $127,810.

After hearing the arguments of counsel on Friolo's total request, and taking the matter under advisement, the circuit court issued its opinion and order. The opinion's "discussion" section provided:

Using the lodestar system, this court determined a judgment of reasonable attorney's fees. The lodestar system calculates a fee by determining the number of hours expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an "initial estimate" of the value of the attorney's services. Hours that are excessive, unnecessary and redundant are excluded from calculation. The trial court may, in its discretion, eliminate specific hours or simply reduce the

award to account for the limited success of particular parts of litigation as there is no precise rule or formula for making those determinations.

The accompanying order stated:

> ORDERED, that [Friolo's] Motion is GRANTED. [Frankel] shall forthwith pay to [Friolo] and her counsel attorneys' fees in the lodestar amount of $65,348, which was calculated by multiplying [Friolo's] counsel's reasonable hourly rate of ($295 per hour and $200 per hour) by the reasonable number of hours [Friolo's] counsel expended in connection *with this matter* (194.4 hours at an hourly rate of $295; 35 hours at an hourly rate of $200)[4]. This calculation takes into consideration the reasonable hours expended, the complexity of the litigation, the success rate of the different parts of the litigation and the uniqueness of the issues.

(emphasis added).

It is clear that the circuit court used the basic lodestar calculation—multiplying Friolo's counsel's reasonable hourly rate by the reasonable number of hours expended in connection with this case. Additionally, the court's order indicates that the attorneys' fees determination took into consideration "the reasonable hours expended, the complexity of the litigation, the success rate of the different parts of the litigation and the uniqueness of the issues."

There is, however, a noticeable absence of any clear explanation of the factors utilized by the court in awarding $65,348, as opposed to the amount requested, or any other amount. Nor is there any explanation of the substantial increase in the award of fees and costs by more than $59,000. It is also unclear whether the fee awarded included both trial and post-trial work and, if so, how the fees were apportioned. Thus, based on the circuit court's order it is difficult, if not impossible, to "follow the reasoning and test the validity of the

---

4. We note that based on these calculations the fee award would total $64,348, or $1,000 less than the amount of the fee award.

[court's] findings." *Friolo I, supra,* 373 Md. at 529, 819 A.2d 354; *see also Stevenson v. Branch Banking & Trust Corp.,* 159 Md.App. 620, 666, 861 A.2d 735 (2004).

■ While the court indicates that it did consider several factors in making its award, without a clear *explanation* of those factors applied to the determination of the fee, the record does not support the conclusion that the circuit court *actually used* the lodestar approach as articulated by the Court of Appeals in *Friolo I, supra,* 373 Md. at 505, 819 A.2d 354. Thus, we find that the court erred, as a matter of law, in its award of attorneys' fees. We shall remand this case to the circuit court for further proceedings, in which the court must apply the lodestar analysis **and** provide a clear explanation of the factors employed in arriving at its award. *See id.*

Only with such an explanation will the parties, and an appellate court, be able to follow the court's reasoning, test the validity of the findings, and be assured that the court properly exercised its considerable discretion.

We think it significant to reiterate the words of the Court of Appeals in its conclusion to *Friolo I:*

Parroting what we said in *Admiral Mortgage, Inc. [v. Cooper,* 357 Md. 533, 745 A.2d 1026 (2000)] ... in directing ... remand, "we do not suggest that the amount of the fee awarded ... in this case was inappropriate." In addition to the other considerations that are part of the overall lodestar analysis, the court will need to consider that, with respect to the bonuses, awardable for fee-shifting purposes only under § 3–507.1, the jury made no predicate finding of a lack of a bona fide dispute. *It will also need to determine whether the unsuccessful claims—for fraud, for a 5% interest in the practice, Salazar's claims—were truly related to the successful ones and, if not, to disallow all time expended on those claims.* In considering the reasonableness of the hourly rates charged by counsel, the court is not bound to any "matrix" adopted by out-of-State courts or agencies but must be guided by the nature of this case and the relevant issues it presented and by the rates or other fee arrange-

ments common in the community for similar kinds of cases. . . . Finally, the court should consider and give appropriate weight to any fee agreement that may have been made between Friolo and counsel.[⁵]

*Id.* at 529, 819 A.2d 354 (citation omitted). (Emphasis added). ***Whether the circuit court abused its discretion by failing to award Friolo attorneys' fees for post-trial, appellate, and post-remand services.***

*We begin our discussion by recalling that the genesis of the appellate history of this case was Friolo's dissatisfaction with the fee initially awarded by the circuit court.*

█ In her cross-appeal, Friolo contends that "reasonable attorneys' fees," as contained in LE §§ 3–427 and 3–507.1, necessarily include an attorneys' fee award for her counsel's (1) appellate advocacy in *Friolo I*, (2) work on remand, and (3) "work required to prosecute this cross-appeal and to defend the Frankel Parties' concurrent appeal, and for the remand proceedings that will ensue." We disagree.

*For the reasons that follow, we shall conclude that entitlement to "reasonable attorneys' fees" under the remedial fee-shifting statutes at issue, LE §§ 3–427 and 3–507.1, does not extend to compensation for appellate and post-remand services where the plaintiff's judgment has been satisfied and the sole issue on appeal is counsel's dissatisfaction with the trial court's fee award.* We do not, however, mean to suggest that post-verdict fees cannot be earned where the trial court has abused its discretion by denying the award of a reasonable fee, or by awarding a patently unreasonable fee.

---

**5.** The circuit court must also be mindful of the impact of Rule 1.5 of the Maryland Rules of Professional Conduct. As the Court of Appeals noted in *Friolo I, supra,* 373 Md. at 529, 819 A.2d 354, the rule, which requires that an attorneys' fee be reasonable, "is not inherently in conflict with fee-shifting statutes," because "[t]here are situations in which the two can be in harmony and where appropriate adjustments to a lodestar approach can produce a fee that would be reasonable under both the rule and the statute." It is the circuit court's obligation, therefore, to ensure that the attorneys' fee award is reasonable under Rule 1.5 and LE §§ 3–427 and 3–507.1.

■   Fee-shifting statutes are an exception to the "American Rule," which states that " 'the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.' " *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 561, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). They "were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client." *Friolo I.*, supra, 373 Md. at 526, 819 A.2d 354 (quoting *Delaware Valley, supra*, 478 U.S. at 565, 106 S.Ct. 3088).   Fee-shifting statutes were instead meant " 'to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws,' and, if plaintiffs are able to engage a lawyer 'based on the statutory assurance that he will be paid a "reasonable fee," the purpose behind the fee-shifting statute has been satisfied.' " *Friolo I, supra*, 373 Md. at 526, 819 A.2d 354 (quoting *Delaware Valley, supra*, 478 U.S. at 565, 106 S.Ct. 3088).[6]

Friolo cites *Pak v. Hoang*, 378 Md. 315, 835 A.2d 1185 (2003), for the proposition that, under Maryland law, a prevailing party may be entitled to an award of "reasonable attorneys' fees" for post-judgment and appellate advocacy.   However, such an award for post-judgment efforts is limited to efforts *directly related* to securing the specific relief afforded to the prevailing party.   *Id.* at 336, 835 A.2d 1185.

In *Pak*, tenants of a townhouse filed counterclaims alleging that their landlord had breached the lease and had not returned their security deposit in violation of Md.Code Ann., Real Prop. § 8–203 (2003 Repl.Vol.).[7]   *Id.* at 318, 835 A.2d

---

**6.**   For extended discussion of fee-shifting statutes, as in derogation of the common law rule, *see* Annotation, 20 Am.Jur.2d Costs, § 63.

**7.**   Section 8–203(e)(4) of the Real Property Article states:

1185. The Circuit Court for Montgomery County granted the tenants' motion for summary judgment, dismissed with prejudice the landlord's claim, and entered judgment against the landlord on the tenants' counterclaims. *Id.* After a damages hearing, the court entered a judgment of $7,378.91 in favor of the tenants, which included their attorney's fees up to that time. *Id.* at 319, 835 A.2d 1185.

The landlord not having satisfied the judgment, the tenants were compelled to engage in post-judgment enforcement efforts. They filed post-judgment discovery motions, to which there was no response. *Id.* The tenants then filed a motion to compel answers to interrogatories and a request for production of documents in aid of execution, which was granted by the circuit court. *Id.* In response to the landlord's failure to comply with the court's order, the tenants filed a petition for civil contempt and for appropriate relief. *Id.* Approximately two months later, the circuit court entered another order directing the landlord to fully and completely respond to the interrogatories and request for documents. *Id.* After the landlord failed to appear at a compliance review hearing, the circuit court issued a writ of body attachment for the landlord's arrest. *Id.* The landlord was arrested and released on her own recognizance. *Id.*

Following a hearing on the tenants' civil contempt petition, the circuit court found the landlord in civil contempt and sanctioned her with 30 days of incarceration subject to a purge provision. *Id.* The tenants then filed a motion for supplemental award of attorney's fees to account for their post-judgment work. *Id.*

One business day before a scheduled compliance hearing, the landlord paid the original judgment and all interest then due by delivering a check to the tenants' counsel. *Id.* At the compliance hearing, the court noted that the supplemental

---

If the landlord, without a reasonable basis, fails to return any part of the security deposit, plus accrued interest, within 45 days after the termination of the tenancy, the tenant has an action of up to threefold of the withheld amount, plus reasonable attorney's fees.

attorney's fees motion was outstanding and set a final hearing on that motion. *Id.* The circuit court denied the tenants' motion for a supplemental award of attorney's fees and a final order was issued. *Id.*

The Court of Appeals determined that the "reasonable attorneys' fees" provision contained in § 8–203(e)(4) of the Real Property Article, a remedial statute akin to LE §§ 3–427 and 3–507.1, *see Friolo I, supra,* 373 Md. at 577, 819 A.2d 1030, "includes fees for post-judgment motions *necessitated* by the landlord's refusal to satisfy the judgment." *Pak, supra,* 378 Md. at 329, 835 A.2d 1185. Thus, under Maryland law, "the Circuit Court has the authority to award attorney's fees earned in *enforcing* a judgment rendered under that statute and has the authority to award attorney's fees in respect to appeals *defending* any such judgment." *Id.* at 321, 835 A.2d 1185 (emphasis added).

Unlike *Pak,* in the case *sub judice* Frankel satisfied the underlying judgment without the need for Friolo to engage in any post-judgment enforcement process. With the exception of the standard motion for new trial, the bulk of Friolo's counsel's post-trial work and *all* of their appellate work was performed, not in an effort to enforce or defend the underlying judgment, but to obtain an increased attorneys' fee award.

Friolo also relies on a comment by the United States Court of Appeals for the Eleventh Circuit in *Scarborough v. Office of Personnel Mgmt.,* 723 F.2d 801, 818 n. 51 (11th Cir.1984):

> When a lower court or administrative agency *erroneously denies* a fee award under a fee-authorizing statute and that decision is corrected on appeal, the prevailing party's fee award includes services performed in the appellate court.

(emphasis added). Thus, under this approach, attorneys' fees incurred at the appellate level in order to *reverse an outright denial* of a fee petition would constitute "reasonable attorneys' fees." *Scarborough,* therefore, is inapposite, for there was never a denial of a fee (or costs of suit) to Friolo.

As recounted, *supra,* the circuit court did not deny Friolo's motion for attorneys' fees, but instead awarded $4,711 on a

$11,778.85 judgment following trial, and $65,348 on remand from the Court of Appeals. We do not construe the Court of Appeals' remand as a denial of a reasonable fee.

Finally, we are unpersuaded by Friolo's argument that the "public policy does not forbid, preclude or discourage an award of fees on fees." She has not, in furtherance of that proposition, directed us to any Maryland case that has sanctioned the so-called "fees upon fees" approach; that is, the generation of additional fees in litigating counsel's dissatisfaction with fees awarded by the trial court. The goal of fee-shifting statutes, as we have addressed, *supra*, is not to compensate attorneys at their usual rate, but to enable a plaintiff to obtain representation and to prevent defendants from avoiding responsibility for their actions. *Friolo I., supra*, 373 Md. at 526, 819 A.2d 354 (quoting *Delaware Valley, supra*, 478 U.S. at 565, 106 S.Ct. 3088). To allow a appellant's counsel to challenge the amount of an attorneys' fee award and to be awarded additional fees for that effort would, on these facts, shift the focus away from the plaintiff and to the attorneys' pocketbook.[8]

In summary, what is before us—and what was before the circuit court—is a garden variety wage and hour claim for unpaid overtime dressed up to appear to be something that it is not. It is a case that might well have fallen within the jurisdiction of the District Court and been prosecuted to success in substantially less time and at substantially less cost. The quality of Friolo's (and Salazar's) claims of fraud, breach of contract, and unjust enrichment were, upon presentation of their evidence, seen to be what they were—efforts to gild the lily and to elevate an overtime wage claim to something more substantial. The suggestion that counsel is entitled to fees in excess of $125,000 in obtaining a judgment of less than $12,000, where the client has been made whole, and where the additional fees have been generated *only* by counsel's contin-

---

8. *See* Bernard P. Codd, Grossly Excessive Attorney's Fee Requests Under the Civil Rights Attorney's Fee Awards Act: Should the Entire Fee Request be Denied?, 24 U. Balt. L.Rev. 149 (1994).

ued litigation of its dissatisfaction with the fee awarded by the circuit court, is untenable. It is, in a word, outrageous.[9]

We hold, therefore, that *Friolo* is not entitled to attorneys' fees for appellate and post-judgment services that are unrelated to (1) protecting the underlying judgment, (2) securing the specific relief afforded *by the trial court*, or (3) overturning a grossly disproportionate award, or an outright denial of attorneys' fees. As such, on remand, the circuit court must determine whether Friolo's counsel are entitled to fees, other than trial-related fees, generated for any of the above-enumerated purposes.

**AWARD OF ATTORNEYS' FEES VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS ASSESSED TO APPELLEE.**

---

9. "You got to know when to hold 'em;
   know when to fold em'.
   know when to walk away;
   know when to run . . ."
Kenny Rogers, *The Gambler.*