942 A.2d 1242

**Joy FRIOLO**

v.

**Douglas FRANKEL, et al.**

**No. 107, Sept. Term, 2006.**

Court of Appeals of Maryland.

Feb. 27, 2008.

444

Leizer Z. Goldsmith (The Goldsmith Law Firm, LLC, on brief), Washington, D.C., for petitioner.

Matthew J. Focht (Gerard J. Emig, Gleason, Flynn, Emig & Fogleman, Chartered, on brief), Rockville, for respondents.

Kieron F. Quinn, Cory L. Zajdel, Quinn, Gordon & Wolf, Chtd., Towson, Suzanne Sangree, Janet Hostetler, Francis D. Murnaghan Appellate Advocacy Fellow, Baltimore, brief of Amici Curiae The American Civil Liberties Union of Maryland, Casa of Maryland, Inc., The D.C. Employment Justice Center, Labor Council for Latin American Advancement, Maryland Employment Lawyers Association, Metropolitan Washington Lawyers Association, The National Council of Law Raza, National Federation of the Blind of Maryland, and the Public Justice Center.

Argued before BELL, C.J., RAKER, CATHELL *, HARRELL, BATTAGLIA, GREENE and ALAN M. WILNER (Retired, Specially Assigned), JJ.

BELL, C.J.

This case has its genesis in an employment dispute, originating in the late 1990's between Joy Friolo (hereinafter "Friolo"), the petitioner, and Douglas Frankel, M.D. and the Maryland/Virginia Med Trauma Group (collectively, "Frankel"), the respondents. It is also the second time that these same parties have been before this Court on substantially the same issue. In this case, we are asked to determine: (i) whether, under the Labor & Employment Article, Maryland Code (1991, 1999 Repl.Vol.), § 3–427(d)[1] and §

---

* Cathell, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Pursuant to Maryland Code (1991, 1999 Repl.Vol.) § 3–427(d) of the Labor & Employment Article, in an action against the employer, "[i]f a court determines that an employee is entitled to recovery in an action under this section, the court may allow against the employer reasonable counsel fees and other costs." Unless otherwise indicated, all future

3–507.1(b),[2] an employee who has recovered a judgment against her employer for violations of Maryland's Wage Payment and Collection Law, §§ 3–501 et *seq.*[3] (hereinafter, the "Payment Law") and Maryland's Wage and Hour Law, § § 3–401 et *seq.*[4] (hereinafter, the "Wage Law"), which judgment has been satisfied and as to which an attorneys' fee award has

---

references are to the 1999 Replacement Volume of the Labor and Employment Article.

2. Maryland Code (1991, 1999 Repl.Vol.) § 3–507.1(b) of the Labor and Employment Article, permits an enhanced damages award to the employee of up to three times the unpaid wage, upon a finding that an employer failed to pay wages under the subtitle, and that the failure to pay was not due to a "bona fide dispute." It provides:

"(b) If, in an action under subsection (a) of this section, a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs."

3. The petitioner alleged violation of Maryland Code (1991, 1999 Repl. Vol.) §§ 3–503 and 3–505 of the Labor & Employment Article. Section 3–503 provides:

"An employer may not make a deduction from the wage of an employee unless the deduction is:

"(1) ordered by a court of competent jurisdiction;

"(2) authorized expressly in writing by the employee;

"(3) allowed by the Commissioner because the employee has received full consideration for the deduction; or

"(4) otherwise made in accordance with any law or any rule or regulation issued by a governmental unit."

Captioned, "Payment on cessation of employment," § 3–505 provides:
"Each employer shall pay an employee or the authorized representative of an employee all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated."

4. The petitioner alleged violation of Maryland Code (1991, 1999 Repl. Vol.) §§ 3–415 and 3–420 of the Labor & Employment Article. Relating to overtime pay, § 3–415, as relevant, provides:

"(a) Except as otherwise provided in this section, each employer shall pay an overtime wage of at least 1.5 times the usual hourly wage, computed in accordance with § 3–420 of this subtitle."

Subject to exceptions not here relevant, § 3–420(a) requires "an employer [to] compute the wage for overtime under § 3–415 of this subtitle on the basis of each hour over 40 hours that an employee works during 1 workweek."

been made by the trial court, recover, in addition, attorneys' fees incurred during post-judgment litigation, the sole purpose of which is to challenge the amount of attorneys' fees awarded by the Circuit Court and (ii) whether the Circuit Court properly applied the lodestar analysis in determining the amount of attorneys' fees to award. Put another way, the issue here is: Where trial has concluded, judgment has been satisfied, and attorneys' fees for those proceedings have been awarded, may a plaintiff recover, under Maryland's Wage and Payment Laws, the additional attorneys' fees he or she incurred to challenge the methodology used for determining, and, thus, the amount of, the attorneys' fees the trial court awarded? Our answer is "yes." For the reasons set forth hereinafter, we shall affirm the judgment of the Court of Special Appeals insofar as it holds that the record does not sufficiently show that the trial court applied, or properly applied, the lodestar analysis in arriving at its fee award and, like that court, remand the case to the Circuit Court for Montgomery County for further proceedings consistent, however, with this opinion.

## HISTORY

In 2001, Friolo[5] sued Frankel in the Circuit Court for Montgomery County seeking to recover unpaid bonuses and overtime and, pursuant to Maryland Code (1991, 1999 Repl. Vol.) § 3–507.1(b) of the Labor and Employment Article, an award of enhanced damages, *i.e.* three times the unpaid wage.[6] A jury returned a verdict in favor of Friolo, for $6,841 in bonuses and $4,937 in overtime pay, which subsequently was reduced to judgment. On the other hand, the jury expressly denied Friolo any award of enhanced damages. The respon-

---

**5.** Victor Salazar, Joy Friolo's husband, was a plaintiff in the original suit. His claims were dismissed at trial. He has not appealed that decision and, thus, is not a party to this appeal.

**6.** Maryland Code (1991, 1999 Repl.Vol.) § 3–507.1(b) of the Labor and Employment Article, permits an enhanced damages award to the employee of up to three times the unpaid wage, upon a finding that an employer failed to pay wages under the subtitle, and that the failure to pay was not due to a "bona fide dispute." *See* note 2.

dents paid the judgment, and Friolo filed a Notice of Satisfaction of Money Judgment. Thereafter, pursuant to §§ 3-427(d) and 3-507.1(b), Friolo filed a motion for attorneys' fees, ultimately requesting an award of $63,399.50. The Circuit Court granted the motion for attorneys' fees, but not the amount sought. Instead, it ordered Frankel to pay 40% of the judgment, $4,711, as attorney's fees, plus $1,552 in costs.

Friolo noted an appeal to the Court of Special Appeals, but this Court, on its own motion and in advance of proceedings in that court, issued a writ of certiorari, *Friolo v. Frankel*, 371 Md. 261, 808 A.2d 806 (Table) (2002), and reversed. *Friolo v. Frankel*, 373 Md. 501, 819 A.2d 354 (2003) (hereinafter, "*Friolo I* "). We held that, in Maryland, the lodestar approach is the proper way in which to determine a reasonable attorneys' fee under fee shifting statutes, including both the Wage Law and the Payment Law, those at issue in the instant case. *Id.* at 504–05, 819 A.2d at 356. "We stress[ed], however, that the approach we approve[d] is broader than simply hours spent times hourly rate but also includes careful consideration of appropriate adjustments to that product, which, in almost all instances, will be case-specific. Under that approach, it is necessarily incumbent upon the trial judge to give a clear explanation of the factors he or she employed in arriving at the end result." *Id.* Noting that the record was insufficient for the purpose, this Court opined:

> "We cannot conclude from this record that the trial court used that approach; its remarks were far too ambiguous in that regard. Even if it intended to apply that approach, it gave no real indication of how and why it concluded that a fee equivalent to a 40% share of the recovery was appropriate-why the $57,000 claimed should be reduced to that amount. One of the benefits of the lodestar approach is that it allows the court to make appropriate findings, so that the parties and any reviewing appellate court can follow the reasoning and test the validity of the findings."

*Friolo I*, 373 Md. at 529, 819 A.2d at 371. We remanded the case to the Circuit Court for analysis under the lodestar approach, in the process identifying relevant issues that also

must be addressed by the trial court. *Id.* at 529–30, 819 A.2d at 371.

On remand, Friolo, having filed a supplemental petition for attorneys' fees, sought $127,810 in attorneys' fees. The Circuit Court issued an opinion acknowledging the applicability of the lodestar approach, briefly discussing it and purporting to have applied it to arrive at the attorneys' fee award it made:

"Using the lodestar system, this court determined a judgment of reasonable attorney's fees. The lodestar system calculates a fee by determining the number of hours expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an 'initial estimate' of the value of the attorney's services. Hours that are excessive, unnecessary and redundant are excluded from calculation. The trial court may, in its discretion, eliminate specific hours or simply reduce the award to account for the limited success of particular parts of litigation as there is no precise rule or formula for making those determinations."

In an accompanying order, it ordered the respondents to pay the petitioner an attorneys' fee of $65,348:

"Defendant shall forthwith pay to plaintiff and her counsel attorneys' fees in the lodestar amount of $65,348, which was calculated by multiplying Plaintiff's counsel's reasonable hourly rate of ($295 per hour and $200 per hour) by the reasonable number of hours Plaintiff's counsel expended in connection with this matter (194.4 hours at an hourly rate of $295; 35 hours at an hourly rate of $200). This calculation takes into consideration the reasonable hours expended, the complexity of the litigation, the success rate of the different parts of the litigation and the uniqueness of the issues."

Both Frankel and Friolo filed motions to alter or amend the judgment and Frankel, in addition, moved to stay its enforcement. In her motion to alter or amend, presaging her appellate argument, Friolo claimed that the court erroneously denied her appellate and post-appellate attorneys' fees. The

court denied all post-trial motions, whereupon both parties appealed.

The Court of Special Appeals vacated the attorneys' fee award, remanding the case to the Circuit Court for the purpose of properly and clearly applying the lodestar approach. *Frankel v. Friolo,* 170 Md.App. 441, 450–51, 907 A.2d 363, 368–69 (2006) (hereinafter, *"Friolo II "*). The intermediate appellate court concluded that a plaintiff is not entitled to an award of attorneys' fees under either the Wage Law or the Payment Law "for appellate and post-remand services where the plaintiff's judgment has been satisfied and the sole issue on appeal is counsel's dissatisfaction with the trial court's award." *Id.* at 452, 907 A.2d at 370. Furthermore, the Court of Special Appeals held that

"Friolo is not entitled to attorneys' fees for appellate and post-judgment services that are unrelated to (1) protecting the underlying judgment, (2) securing the specific relief afforded by the trial court, or (3) overturning a grossly disproportionate award, or an outright denial of attorneys' fees."

*Id.* at 457, 907 A.2d at 372. Notwithstanding that the trial court stated that it did consider several lodestar factors in making its attorney fee award, the intermediate appellate court also concluded that, without a clear and thorough explanation of the factors the court considered in arriving at the award using the lodestar approach, the record did not support the conclusion that, and it was therefore unable to determine if, the lodestar approach, in fact, had been used. *Id.* at 451, 907 A.2d at 369.

Thus, having determined that, in making the award of attorneys' fees, the Circuit Court erred as a matter of law, the intermediate appellate court remanded the case to that court for further proceedings. The Court of Special Appeals also identified, in the process, factors, in addition to the other considerations set forth in this Court's *Friolo I* opinion, 373 Md. 501, 819 A.2d at 354, that the trial court should consider on remand: (i) the jury's specific denial of enhanced damages;

(ii) the amount of time counsel spent on Friolo's unsuccessful claims, in relation to the successful claims; (iii) the reasonableness of counsel's hourly rates; and (iv) a fee agreement, if any, between Friolo and counsel. *Friolo II* at 170 Md.App. at 451–52, 907 A.2d at 369.

The petitioner filed a petition for writ of certiorari with this Court, seeking reversal of the judgment of the Court of Special Appeals insofar as it denied Friolo attorneys' fees incurred during the appellate process. She argued that, on the contrary, due to her success [7] during the appeals process, as well as on subsequent remand, the Circuit Court should have been instructed to factor into its analysis under the lodestar method, the time spent and attorneys' fees incurred leading up to, and culminating in, the *Friolo I* decision. We granted her petition. *Friolo v. Frankel,* 396 Md. 11, 912 A.2d 648 (Table) (2006).

## DISCUSSION

### I

As the intermediate appellate court acknowledged, this Court, in *Friolo I,* held that "the lodestar approach, with its adjustments, is the presumptively appropriate methodology to be used under the Wage ... Law and the Payment Law." 373 Md. at 529, 819 A.2d at 371. Under the lodestar approach, we observed, the trial court will arrive at a "useful starting point" by multiplying "the number of hours reasonably expended on the litigation ... by a reasonable hourly rate." *Id.* at 523, 819 A.2d at 367, citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 50–51(1983). As a result, at that starting point, "excessive, redundant, or otherwise unnecessary" hours should be exclud-

---

7. Friolo counts the following as indicators of her success: (1) Friolo's advocation, and this Court's determination in Friolo I that attorneys' fee awards under the Maryland Wage and Payment Laws are to be determined using a lodestar analysis, and (2) the lower court's award of increased attorneys' fees on remand, up from the first award of $4,711 plus $1,552 in costs to $65,348 on remand.

ed, as well as hours that are "not properly billed to one's client[.]" *Id.* An increase or decrease in fee adjustments can then be made, based on consideration of a host of factors.[8] *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940, 76 L.Ed.2d at 51.

■ On remand, the Circuit Court, as the Court of Special Appeals noted, indicated its use and application of the preliminary lodestar calculation, that of reasonable hours multiplied by a reasonable hourly rate, and listed the factors it considered[9] in arriving at its $65,348 award. Critically, and in direct conflict with, and in apparent disregard of, our instructions in *Friolo I*,[10] the court failed to provide an explanation of

---

8. In *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 48 n. 3 (1983), the Court referred to the twelve factors identified, and explained, in great detail in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974):(1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount of damages or back pay involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

The *Hensley* Court also noted that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 n. 9, 103 S.Ct. 1933, 1940 n. 9, 76 L.Ed.2d 40, 49 n. 9 (1983).

9. The Circuit Court's order indicates that the court considered the following factors in arriving at its award: "the reasonable hours expended, the complexity of the litigation, the success rate of the different parts of the litigation and the uniqueness of the issues."

10. Having concluded from the ambiguity of the Circuit Court's comments on the subject, that the record did not make clear that the trial court used the lodestar approach, we stated:

"Even if it intended to apply that approach, it gave no real indication of how and why it concluded that a fee equivalent to a 40% share of the recovery was appropriate-why the $57,000 claimed should be reduced to that amount. One of the benefits of the lodestar approach is that it allows the court to make appropriate findings, so that the parties and any reviewing appellate court can follow the reasoning and test the validity of the findings."

*how* these factors affected the amount of the award, thereby erring as a matter of law. *See Friolo I*, 373 Md. at 529, 819 A.2d at 371. *See also Hensley*, 461 U.S. at 437, 103 S.Ct. at 1942, 76 L.Ed.2d at 48 n. 3. (Although the trial court has discretion in determining the fee award amount, "[i]t remains important, however, for the ... court to provide a concise but clear explanation of its reasons for the fee award."); *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717 (5th Cir.1974) (Fee award remanded because "[t]he judgment does not elucidate the factors which contributed to the decision and upon which it was based."). On this remand, once again we require the Circuit Court to apply the lodestar approach, using the analysis set forth in *Friolo I,* and as reiterated herein, "[such] that the parties and any reviewing appellate court can follow the reasoning and test the validity of the findings." *Friolo I,* 373 Md. at 529, 819 A.2d at 371. We reiterate that the trial court should consider, at the least, the following:

> "[i]n addition to the other considerations that are part of the overall lodestar analysis, the court will need to consider that, with respect to the bonuses, awardable for fee-shifting purposes only under § 3–507.1, the jury made no predicate finding of a lack of a bona fide dispute. It will also need to determine whether the unsuccessful claims— for fraud, for a 5% interest in the practice, Salazar's claims—were truly related to the successful ones and, if not, to disallow all time expended on those claims. In considering the reasonableness of the hourly rates charged by counsel, the court is not bound to any "matrix" adopted by out-of-State courts or agencies but must be guided by the nature of this case and the relevant issues it presented and by the rates or other fee arrangements common in the community for similar kinds of cases.... [T]he court should [also] consider and give appropriate weight to any fee agreement that may have been made between Friolo and counsel."

*Friolo v. Frankel*, 373 Md. 501, 529, 819 A.2d 354, 371 (2003).

*Id.* at 529–30, 819 A.2d at 371. Moreover, we again direct the court to "be mindful of Rule 1.5[11] of the Maryland Rules of Professional Conduct, which requires that a lawyer's fee be reasonable and which also sets out factors to be considered in determining the reasonableness of a fee." *Id.* at 527, 819 A.2d at 370.

 Maryland generally adheres to the common law, or American rule, that each party to a case is responsible for the fees of its own attorneys, regardless of the outcome. *See Montgomery v. Eastern Correctional Inst.,* 377 Md. 615, 637, 835 A.2d 169, 183 (2003) ("attorney's fees are to be borne by the party that incurs them, irrespective of the outcome of the case"); *Caffrey v. Dept. of Liquor Control for Montgomery County,* 370 Md. 272, 292, 805 A.2d 268, 280 (2002) (as a "matter of substantive law ..., damages do not include counsel fees[,]" pursuant to the American Rule) (citations omitted); *Megonnell v. United Services Auto. Ass'n,* 368 Md. 633, 659, 796 A.2d 758, 774 (2002) ("This State adheres to the 'American Rule' which generally requires that each party be responsible for their own counsel fees."). Fee-shifting, or the statutorily-imposed obligation to pay the opponent's attorneys' fees, is an exception to this rule. *See Caffrey,* 370 Md. at 292, 805 A.2d at 280 (fee-shifting "is a deviation from the 'American Rule' "). The fee-shifting statutes at issue in this case permit a trial court, *in its discretion,* to award attorneys' fees, and such discretion, consistent with the intent of the General Assembly, is "to be exercised liberally in favor of awarding fees, at least

---

11. Rule 1.5(a) states: "A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent."

in appropriate cases." *Id.* at 516, 819 A.2d at 362. The court's discretion is triggered, in the case of the Wage Law, upon the court's determination "that an employee is entitled to recovery in an action under this section," § 3–427(d), and under the Payment Law, upon the court's finding "that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute." § 3–507.1(b). It is clear, therefore, and there is no disagreement between the parties, with regard to Friolo's entitlement or the right of the Circuit Court to have awarded attorneys' fees under the Wage Law; the jury found the predicate violation and the trial court exercised its discretion to make an attorneys' fee award. Whether Friolo is entitled to an attorneys' fee award under the Payment Law, however, is questionable, as the jury did not conclude that Frankel's failure to pay back wages was not due to a bona fide dispute and denied enhanced damages, and is a matter for the Circuit Court to determine on remand, as part of its analysis under the lodestar approach.[12]

As we stated in *Friolo I,* the goal of fee-shifting statutes in general is to ensure that individuals, when injured by violations, or threatened violations, of certain laws, have access to legal counsel by a "statutory assurance that [his or her counsel] will be paid a 'reasonable fee[.]' " 373 Md. at 526, 819 A.2d at 369, quoting *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986). *See Battaglia v. Clinical Perfusionists,* 338 Md. 352, 364, 658 A.2d 680, 686 (1995) (The purpose of the Maryland Wage and Payment Collection Law is "to provide a vehicle for employees to collect, and an incentive for employers to pay, back wages."). Critical to the achievement of this goal is providing a mechanism, here, the fee shifting statute, and an incentive, based on a realistic expectation of reasonable

---

**12.** As we noted in *Friolo I,* the allowance and determination of an enhanced damages award is a matter for the jury, while the allowance and determination of an attorneys' fee award is a matter for the judge. 373 Md. at 519, 819 A.2d at 365.

compensation, for attorneys to agree to take on wage dispute cases, even where the dollar amount of the potential recovery may be relatively small.[13] "Hence, if plaintiffs, such as [Friolo], find it possible to engage a lawyer based on [a fee-shifting statute], the purpose behind the fee-shifting statute has been satisfied." *Delaware Valley*, 478 U.S. at 564, 106 S.Ct. at 3098. Indeed, here, Friolo was able to secure competent advice and representation from counsel for her wage dispute claims under both the Payment and Wage Laws, thereby satisfying the goal of those statutes. This goal of assuring Maryland employees, who believe they have been wronged by their employers, that they will be able to obtain legal representation by virtue of a statutory provision that ensures that their legal counsel will be compensated reasonably is undermined by a test that is not clear with regard to the role that appellate advocacy plays in the lodestar analysis. It is as important to compensate counsel for ensuring that the trial court gets it right, even if to do so requires counsel to appeal, as it is to ensure that counsel is compensated for services rendered at trial. Indeed, it is a disincentive to the retention of competent counsel in these kinds of cases to deny recovery for successful appellate advocacy, including advocacy that demonstrates trial court error.

■ The Court of Special Appeals, as we have seen, held that appellate and post-judgment attorneys' fees are appropriately allowed only if related to protecting the underlying judgment, securing the specific relief ordered by the trial court or overturning either a grossly disproportionate or outright denial of a fee award. *Friolo II* at 457, 907 A.2d at 372. While the test is, for the most part, an appropriate one, it is in one particular incongruous with the spirit, if not the letter, of the Payment and Wage Laws. Under the Court of

---

**13.** During testimony on the House Bill that ultimately resulted in the Payment Law as it exists today, the "Executive Director of the Maryland Volunteer Lawyers Service reported that the majority of the claims [under the then-existing Payment Law] were on behalf of low income people and involved between $150 and $200." *Friolo v. Frankel*, 373 Md. 501, 517, 819 A.2d 354, 363 (2003).

Special Appeals' test, a petitioner may not be permitted to recover any attorneys' fees for his or her post-judgment successes. Although this test would permit attorneys' fees for appellate work that protects or seeks to secure the underlying judgment, it would not apply where the underlying judgment is the judgment sought to be overturned, where, rather than protecting or securing the underlying judgment, the attempt is to overturn it as inadequate or not properly determined. Certainly, that is the circumstance in this case—Friolo is not entitled to appellate attorneys' fees under the protecting or securing exceptions to this test, as Frankel long ago satisfied the underlying judgment, as evidenced by Friolo's filing of a Notice of Satisfaction of Money Judgment. The test also would allow attorneys' fees incurred while overturning an outright denial of an attorneys' fee award, an exception which also is inapplicable to Friolo.

The final, and most confusing, circumstance under the test set forth by the Court of Special Appeals would allow post-judgment attorneys' fees incurred while "overturning a grossly disproportionate award." *Friolo II* at 457, 907 A.2d at 372. The intermediate appellate court, however, does not expressly define what constitutes a "grossly disproportionate award." It is unclear whether the court was referring to a situation where the fee award is grossly disproportionate to the initial judgment, or to a situation where attorneys' fees awarded for post-judgment activity is grossly disproportionate to the attorneys' fees awarded for the initial litigation on the underlying wage dispute, or to some other situation envisioned by the court. Absent a clearer definition of what exactly "grossly disproportionate" means, it is impossible to apply the test in any meaningful way, and, in addition, it would appear to be contrary to the intent underlying § 3–427, the fee shifting statute. Moreover, given the applicability of the lodestar analysis to the attorneys' fee issue in the case sub judice, what attorneys' fee would be "grossly disproportionate" could not be determined, in any event, until after the trial court's lodestar analysis had been reviewed and determined to be deficient.

Instead, the degree of success on appeal is a standard more congruent with the purpose of the Wage and Payment Laws. Where a plaintiff obtains relief under either of these laws, obtains an award for attorneys' fees incurred while obtaining that relief, and later, on appeal, is successful in procuring an increase in those fees or is successful in correcting a trial court's error, the attorneys' fees incurred during the appeal should be considered as a part of the lodestar analysis required to be conducted on remand and, in that way, be capable of being recouped by the plaintiff. The Supreme Court, in *Hensley v. Eckerhart,* made evident that the degree of success is "a crucial factor in determining the proper amount of an award of attorney's fees...." 461 U.S. 424, 440, 103 S.Ct 1933, 1943 (1983). *See also Stromberg Metal Works, Inc. v. Univ. of Maryland,* 395 Md. 120, 128, 909 A.2d 663, 668 (2006) (in determining shifted attorneys' fees under the State Public Information Act, Maryland Code (1984, 2004 Reply. Vol.) §§ 10–611 *et seq.* of the State Government Article, the first consideration is the public benefit derived from the degree of success of the lawsuit); *Manor Club v. Flaa,* 387 Md. 297, 305, 874 A.2d 1020, 1025 (2005) (upholding an award of shifted attorneys' fees in which the "degree of success in the pursuit of ... claims" was a consideration). In a later case, *Comm'r, INS v. Jean,* the Supreme Court stated that "[b]ecause *Hensley v. Eckerhart* [supra], requires the district court to consider the relationship between the amount of the fee awarded and the results obtained, *fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation.*" 496 U.S. 154, 163 n. 10, 110 S.Ct. 2316, 2321 n. 10, 110 L.Ed.2d 134 (1990) (emphasis added). And, "[w]hile this Court can locate no [Maryland or] Fourth Circuit authority specially applying *Hensley* to request for fees-on-fees, the Fourth Circuit has held that the determination of an appropriate award of fees-on-fees is within the district court's discretion." *Mercer v. Duke University,* 301 F.Supp.2d 454, 469 (M.D.N.C.2004). *See also Trimper v. City of Norfolk, Va.,* 58 F.3d 68, 77, (4th Cir.1995) (an appeal from attorneys' fees awarded under 42 U.S.C. § 1988) ("[I]t is well settled that the

time spent defending entitlement to attorney's fees is properly compensable...."); *Daly v. Hill,* 790 F.2d 1071, 1080 (4th Cir.1986)(an appeal from attorneys' fees awarded under 42 U.S.C. § 1988) (time spent preparing and arguing a fee petition is properly compensable in a fee award). Recently, in *Nigh v. Koons Buick Pontiac GMC, Inc.,* 478 F.3d 183, (4th Cir.2007), the Fourth Circuit permitted attorneys' fees incurred on appeal to be shifted, stating that the Federal Truth in Lending Act allows plaintiffs to seek attorneys' fees in a successful action, including successful appeals. The court further opined that an "action constitutes more than an individual appearance before one particular tribunal. In ordinary usage, an action-a civil action, at least-begins with the filing of a complaint and ends when no party may any longer obtain review of the final disposition of the case, encompassing all steps necessary in between." *Id.* at 185.

 In the instant case, Friolo succeeded in obtaining the initial attorneys' fee award of $4,711, in vacating the judgment in *Friolo I* because this Court agreed with Friolo and held that the lodestar method is the proper analysis by which to determine attorneys' fees under the Wage and Payment Laws, and in obtaining a new, significantly higher fee award, in the amount of $65,348, on remand. While it is in the Circuit Court's discretion ultimately to determine Friolo's degree of success, which will be reflected in the lodestar calculus to determine the appropriate amount of attorneys' fees to award, one of the factors it must consider is the attorneys' fees that contributed to any success that the court determines the plaintiff had.[14] Therefore, on remand, the

---

14. We do note one word of caution. When an appeal is noted on behalf of the party seeking attorneys' fees but the only significant issue raised in the appeal is the amount of attorneys' fees awarded (or not awarded) by the trial court, there could arise a conflict of interest between the attorney and the client, especially if the appeal is not successful. In that event, unless some other arrangement is made between the lawyer and client, the client, who will be the appellant, will likely bear the cost of the appeal, which may be substantial, even though the principal beneficiary of a successful appeal might be the lawyer. Before agreeing to pursue the appeal, the client should be advised of that prospect.

Circuit Court must include in the lodestar analysis, appellate fees Friolo incurred in successfully challenging, based on the flawed methodology the Circuit Court used, the attorneys' fee awarded in this case. Only in that way will the fee award be consistent with the purpose behind both the Wage and Payment Laws.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. CASE REMANDED TO THAT COURT FOR REMAND TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS, CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENTS.