951 A.2d 506

**PROGRAMMERS' CONSORTIUM, INC.**

v.

**Karl CLARK.**

**No. 1317, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

July 1, 2008.

508

John D. Quinn of Washington, D.C., for appellant.

Barton D. Moorstein of Rockville, for appellee.

Argued before ADKINS, BARBERA, and CHARLES E. MOYLAN, JR. (retired, specially assigned), JJ.

MOYLAN, J.

On the ultimate merits, the trial process managed to resolve this case without undue difficulty. Essentially what is before us on appeal are several procedural tangles. We will attempt to untangle those procedural snarls so as to effectuate what we perceive to have been the jury's decision on the merits.

The appellee, Karl Clark, filed suit in the Circuit Court for Montgomery County against his former employer, the appellant, Programmers' Consortium, Inc., for unpaid wages. On November 22, 2006, at the end of a two-day trial, the jury returned an award of $80,000.01 in favor of the appellee. On September 27, 2006, the trial judge further ordered the appellant to pay attorney's fees in the amount of $41,100 plus costs in the amount of $2,794.17. On appeal, the appellant raises the three contentions

1. that the judge erroneously permitted the jury to render its verdict on a redundant statutory claim for unpaid wages and erroneously submitted to the jury a confusing verdict sheet;

2. that the judge erroneously awarded attorney's fees to the appellee; and

3. that the judge erroneously dismissed the appellant's claims for trespass, conversion, and punitive damages.

### Factual Background

Taking, as we must, that version of the facts most favorable to the prevailing party (the appellee), there was evidence to support the following version of events. The appellee was hired by the appellant on October 14, 2003, to perform computer software sales services at a base salary of $85,000 per year. Both parties signed a written employment agreement. The appellee was to be paid, on a semi-monthly basis, a net amount, after deductions, of $3,541.67. The employment was subject to a 90–day probationary period, during which the appellee was obligated to generate nine demonstrations of the appellant's product. The appellee successfully performed during the probationary period, scheduling the requisite number of customer demonstrations.

It was during that probationary period that the appellee first became aware that the appellant was suffering financial difficulties. Several of the appellee's paychecks bounced. They were subsequently made good by the appellant, who explained that because of the nature of the business and the

fact that it was a start-up company, there were sometimes difficulties with the cash flow. The appellee accepted the explanation and continued to perform services for the appellant. The appellee trusted the appellant and enjoyed working for it. After the conclusion of the 90–day probationary period, the appellee continued to work and was never advised that his compensation arrangement was being modified in any way. Specifically, he was never told that his compensation was being switched to a commission only basis. The appellee continued working on a full-time basis.

Over the course of succeeding months, the payment of the appellee's salary remained irregular and intermittent. The appellant continued to explain that it needed to close some sales and that, as it did so, the appellee would be paid. The appellee remained patient. In the months of July, October, and November of 2004, the appellee received paychecks representing essentially the monthly fraction of an annual salary of $ 85,000. At no time was there any suggestion that the appellee was being switched onto a "commission only" compensation basis. The "monthly" payments, however, remained sporadic, and the appellee, increasingly concerned, inquired more insistently about his paycheck. The appellant continued to explain that the cash in hand was in short supply and that the appellee should be patient.

It was in January of 2005 that the appellant initiated discussions with the appellee about a modification of their compensation arrangement. The appellant offered the appellee a base salary of $60,000 per year plus commissions after a certain threshold of sales had been passed. The suggested arrangement was unsatisfactory to the appellee, and he discontinued working for the appellant.

### Procedural Background

On March 4, 2005, the appellee filed suit. The complaint consisted of two counts. The first count charged the appellant with a breach of contract, alleging the appellant's failure to fulfill its contractual obligation to pay the appellee's wages pursuant to the employment agreement. The basic damages

clause requested was $80,000.01 in unpaid wages. The count also sought punitive damages, court costs, and reasonable attorney's fees.

The second count was brought pursuant to Maryland Code, *Labor and Employment Article,* § 3–501 et seq. That count also sought basic damages of $80,000.01, representing the unpaid wages. It also sought, pursuant to § 3–507.1(b), treble damages on the basis that the wages had been withheld "not as a result of a bona fide dispute." Both counts were based upon the same conduct by omission, the failure to pay the wages that were due. The appellee simply based his claim, as he was entitled to do, on two alternative legal predicates—a generic breach of contract claim and a statutory claim pursuant to §§ 3–505 and 3–507.1(a). The second count also included a claim for treble damages pursuant to subsection 3–507.1(b). Section 3–507.1(a) and (b) provide:

(a) *In general.*—Notwithstanding any remedy available under § 3–507 of this subtitle, if an employer fails to pay an employee in accordance with § 3–502 or § 3–505 of this subtitle, after 2 weeks have elapsed from the date on which the employer is required to have paid the wages, *the employee may bring an action against the employer to recover the unpaid wages.*

(b) *Award and costs.*—*If,* in an action under subsection (a) of this section, *a court finds that an employer withheld the wage of an employee* in violation of this subtitle and *not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage,* and reasonable counsel fees and other costs.

(Emphasis supplied).

## The Maryland Wage Payment Law

It will be helpful to put the statutory claim in historic perspective. Title 3 of the Labor and Employment Article deals generally with "Employment Standards and Conditions." Subtitle 5 thereof is the Maryland Wage Payment and Collection Law, embracing § § 3–501 through 3–509. As Judge

Battaglia pointed out in *Baltimore Harbor Charters, Ltd. v. Ayd*, 365 Md. 366, 380–81, 780 A.2d 303 (2001), the Maryland Wage Act was enacted by the General Assembly in 1966. Initially it conferred "enforcement duties and powers on the Commissioner of the Department of Labor and Industry," thereby giving "the State the ability to litigate wage disputes on behalf of private citizens who were suffering the abuse of non-payment of wages from their employers." With specific reference to § 3–507.1 now before us, the General Assembly, by ch. 578 of the Acts of 1993, amended the Wage Act "to provide employees with a private cause of action against employers for failure to pay wages owed to the employee upon termination of the employment relationship." 365 Md. at 383, 780 A.2d 303.

In *Battaglia v. Clinical Perfusionists, Inc.*, 338 Md. 352, 356, 658 A.2d 680 (1995), Judge Rodowsky elaborated upon that addition of a private remedy by the aggrieved employee.

> *Prior to October 1, 1993* Md.Code (1991), LE *§ 507 was the exclusive civil enforcement mechanism* in the Act. It provides for initial informal mediation by the Commissioner of Labor and Industry. *Id.* § 3–507(a)(1). Thereafter, with the consent of the employee, the Attorney General may bring an action on the employee's behalf, *id.* § 3–507(a)(2), in which "the court may award the employee an amount not exceeding 3 times the wage." *Id.* § 3–507(b)(1). *The private remedy which Battaglia seeks to enforce was added to the Act as § 3–507.1* by Chapter 578 of the Acts of 1993, *effective October 1, 1993.*

(Emphasis supplied).

In *Baltimore Harbor Charters, Ltd. v. Ayd*, 134 Md.App. 188, 204–05, 759 A.2d 1091 (2000), aff'd, 365 Md. 366, 780 A.2d 303 (2001), Judge Adkins wrote for this Court in explaining that the "principal purpose of the private remedy provided under the Act was 'to provide a vehicle for employees to collect, and an incentive for employers to pay, back wages.'" Focusing in on § 3–505, Judge Adkins pointed out that its

particular purpose was to insure prompt payment of wages that were due following a termination of employment.

The Act also requires prompt payment of wages after termination, by specifying when an employer must pay wages due for work performed before termination of employment. Section 3–505 provides that "[e]ach employer shall pay an employee ... all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated."

134 Md.App. at 205, 759 A.2d 1091. For a violation of § 3–505 (as well as for a violation of § 3–502), § 3–507.1 is then the enforcement mechanism for an employee bringing a private action.

To enforce both of these provisions, the Act creates a remedy if "an employer fails to pay an employee in accordance with" either the "regular pay" requirements of section 3–502 or the "prompt pay after termination" requirements of section 3–505 ... Section 3–507.1.

*Id.*

### "Redundant Claims" and "Inconsistent Verdicts"

Against that statutory backdrop, the appellant's first contention rings hollow. The contention is that:

The Circuit Court Erred by Permitting the Jury to Render a Verdict on a Redundant Statutory Claim for Unpaid Wages That Was Not Pled in the Complaint and by Submitting a Flawed Jury Verdict Form That Resulted in a Defective, Confusing, Duplicative and Inconsistent Verdict.

It is essentially a two-pronged attack on the trial judge's verdict sheet. The judge put five questions to the jury. The jury returned five verdicts that seem to us to have made perfect sense.

*Verdict Form:* **1. Under Count 1, did the defendant The Programmers' Consortium breach a contract between Karl Clark and The Programmers' Consortium?**

*Verdict:* **Yes.**

*Verdict From:* **2. State the amount of damages suffered by Mr. Clark as a result of the breach of contract by the defendant The Programmers' Consortium.**

*Verdict:* **$1.00 plus reasonable counsel fees.**

*Verdict Form:* **3. Under Count 2, did the defendant The Programmers' Consortium fail to pay wages due to Karl Clark at the conclusion of his employment?**

*Verdict:* **Yes.**

*Verdict Form:* **4. What amount of wages are due to Karl Clark from The Programmers' Consortium?**

*Verdict:* **$80,000.01.**

*Verdict Form:* **5. Were the wages to Mr. Clark withheld in violation of the law and not as a result of a bona fide dispute between the parties?**

*Verdict:* **No.**

Two of those issues submitted to the jury, # 2 and # 4, concern only the amount of damages. Issues # 1, # 3, and # 5 concern liability.

### "Redundant" Claims?

 Contrary to the appellant's argument, Issue # 1 (under Count 1) and Issue # 3 (under Count 2) are not impermissibly "redundant." For the grievance of unpaid wages Maryland law now provides an employee with no less than two avenues of redress. One is a common law action for breach of contract. Additional statutory redress is now, as we have discussed, available pursuant to §§ 3–505 and 3–507.1 of the Wage Payment Law. It is a common practice for a plaintiff to bring charges under both of these alternative avenues of relief.[1] See *Battaglia v. Clinical Perfusionists,* 338 Md. at

---

1. As an abstract proposition, an employer could be liable for a violation of the Wage Payment Law without necessarily being liable for a breach of contract. As Judge Battaglia noted for the Court of Appeals in *Baltimore Harbor v. Ayd,* 365 Md. at 397, 780 A.2d 303:

354, 658 A.2d 680 ("Battaglia filed *a two-count complaint ... alleging* in Count 1 *breach of her employment contract and* in Count 2 *a violation of the Act.*") (emphasis supplied); *Baltimore Harbor v. Ayd,* 134 Md.App. at 195, 759 A.2d 1091 ("Ayd filed *a complaint* against BHC *alleging breach of contract,* quantum meruit, unjust enrichment, *and a violation of Maryland's Wage Payment and Collection Law.*") (emphasis supplied). Liability may be based on either or both of those alternative legal theories. The only thing that is barred is double recovery.

### "Unpled" Claims?

Neither is it true that Issue # 3 dealt with a "statutory claim for unpaid wages that was not pled in the complaint." Issue # 3 dealt with Count 2 and Count 2 expressly described itself as a "Statutory violation" and alleged that its statutory predicate was *"Labor and Employment Article,* Sects. 3–501, et seq." The appellant appears to be asking, it seems to us disingenuously, how a single count (Count 2) could give rise to two separate issues (Issue # 3 and Issue # 5) and to two separate answers.

■ The answer is quite simple. Count 2, as submitted to the jury, gave rise to a compound question, and the trial judge had the foresight to break the compound question down into its component parts. A failure to pay wages after an employee's termination under § 3–505 may be pursued as a private action pursuant to § 3–507.1. A violation under § 3–507.1 may be of either a basic and unaggravated variety, under subsection (a), or of an aggravated variety, under subsection (b). The two are not mutually exclusive. Indeed, the unaggravated variety is a lesser, included violation within the aggravated variety. The judge simply posed the basic violation (Issue

*The failure to pay an employee wages* conceded to be owed to him for work performed prior to the termination of his employment *is a violation of § 3–505 of the Wage Act, regardless of ... whether the termination was in violation of an employment contract.*
(Emphasis supplied).

# 3) and the aggravation (Issue # 5) as separate questions. In *Baltimore Harbor v. Ayd*, 134 Md.App. at 217, 759 A.2d 1091, this Court recognized that potentially double-barreled impact of § 3–507.1:

The statutory damages available under section 3–507.1 are both compensatory and punitive.

■ Self-evidently, that double-barreled potentiality created the possibility of 1) compensatory damages alone or 2) compensatory damages plus enhanced damages. The jury, therefore, needed some medium through which it could communicate its choice of one or both. Hence the bifurcated inquiry on the verdict sheet. If, by contrast, only a single compound question had been put to the jury, the answer could have been frustratingly ambiguous. If the jury had been asked only whether an aggravated violation of § 3–505 had occurred, giving rise to the possibility of treble damages, the answer "No" would have left the court very much in the dark. It would not have known whether the jury had found an unaggravated violation of § 3–505, pursuant to § 3–507.1(a), or not. Fortunately, the trial judge forfended such an unresolved ambiguity by sensibly breaking down the compound question into its two parts. We see nothing amiss in that.

## "Inconsistent" Verdicts?

■ The appellant finally argues that by "permitting the jury to consider appellee's wage claim twice, once as a breach of contract claim alleging only failure to pay wages and again as a statutory claim for non-payment of those same wages," the result "was unfair to appellant and was likely to lead to confusion and an inconsistent verdict." The alleged "inconsistency" was between 1) under Issue # 2, the $1.00 in damages for the breach of contract, and 2) under Issue # 4, the $80,000.01 in damages for the Wage Law violation. The appellant seems to be saying that if it were, indeed, liable for the unpaid wages under both Count 1 and Count 2, logical consistency should have required the jury to award damages of $80,000.01 under each count, for a total damages award of $160,000.02. By dumb luck or by prescience, however, the

jury did no such thing. The appellant does not persuade us how it was prejudiced by that act of ostensibly "inconsistent" grace.[2]

■ In cases where the jury is not as prescient as this one was in avoiding a double and undeserved recovery, it is the judge who then has to take the necessary remedial measures. In *Battaglia v. Clinical Perfusionists*, the jury gave the plaintiff an award under the breach of contract count and a separate award for the violation of the Wage Act. The trial judge cured the double recovery problem by granting a judgment notwithstanding the verdict. 338 Md. at 355, 658 A.2d 680. The Court of Appeals also noted, 338 Md. at 358, 658 A.2d 680:

> We were further advised that both parties assumed that, *if the verdict* on Count II *had been allowed to stand, it would have been reduced* by the amount of the verdict on Count I, *in order to avoid a double recovery.*

(Emphasis supplied).

In *Baltimore Harbor v. Ayd*, this Court also dealt with a double recovery problem. The jury awarded the plaintiff $76,099.33 "on his breach of contract claim, and made an identical award on his unjust enrichment claim." 134 Md.App. at 195, 759 A.2d 1091. The fact that the second recovery was for unjust enrichment rather than for a violation of the Wage Law is inconsequential. The trial judge solved the problem of double recovery by persuading the plaintiff to accept a remittitur for the precise amount of the duplicate award. This Court put its seal of approval on the remittitur as we pointed out that the

> trial court recognized *the peculiarity in the jury awarding precisely the same amount of dollars and cents for both the*

---

**2.** It does appear that the $1 award for the Count 1 breach of contract may have been duplicative in that it was theoretically subsumed within the $ 80,000.01 award for the Count 2 violation of the Wage Act. The appellee may, therefore, owe the appellant one dollar. The appellant, however, has not pressed the point and we are hesitant to do so *nostra sponte.*

*breach of contract and the unjust enrichment claims,* and concluded that the jury became confused about how to deal with the unjust enrichment claim.

134 Md.App. at 201, 759 A.2d 1091 (emphasis supplied).

A double recovery was deftly avoided in this case, and that is no cause for regret. In the last analysis, the verdict sheet was not "flawed;" the charge of having violated the Wage Payment Law was not "unpled;" and the verdicts were not "inconsistent."

### The Award of Attorney's Fees

The trial judge ultimately ordered the appellant to pay to the appellee attorney's fees in the amount of $41,100 plus costs in the amount of $2,794.17. The appellant contends that the judge had no authority to do that. There were, of course, only two bases on which an award of attorney's fees could have been made. The jury found the appellant liable for a breach of promise under Count 1. The jury also found the appellant liable for a violation of the Wage Payment Law under Count 2.

### Breach of Contract And the "American Rule"

We fully agree with the appellant that the judge had no authority to award attorney's fees to the appellee for the breach of contract. The appellee, indeed, does not contest this. The prevailing law was definitively stated for this Court by Judge Davis in *Wells Fargo Bank v. Diamond Point Plaza,* 171 Md.App. 70, 103, 908 A.2d 684 (2006):

Upon considering a request for attorney's fees, *Maryland courts adhere to the "American Rule," which states that "attorney's fees are ordinarily not recoverable by a prevailing party in a lawsuit* ... '[t]he general rule is that costs and expenses of litigation, other than the usual and ordinary Court costs, are not recoverable in an action for [compensatory] damages.'" We have previously noted that "[t]his is true whether the action seeking fees sounds in contract or tort." In some instances, *"a trial court may award attorneys' fees only in the unusual situation where the trial court is authorized to award the prevailing litigant reason-*

*able attorneys' fees* or where, as more common, a contract between the parties specifically authorizes attorneys' fees." (Emphasis supplied). See also *Hess Construction Co. v. Board of Education of Prince George's County,* 341 Md. 155, 159–61, 669 A.2d 1352 (1996); *Chang v. Brethren Mutual Insurance Co.,* 168 Md.App. 534, 551–52, 897 A.2d 854 (2006); *Stevenson v. Branch Banking and Trust Corp.,* 159 Md.App. 620, 662–64, 861 A.2d 735 (2004); *Maxima v. 6933 Arlington Development,* 100 Md.App. 441, 452–53, 641 A.2d 977 (1994). There was in this case no contractual agreement between the parties with respect to attorney's fees.

### Section 3–507.1(b)

If an award could be properly authorized in this case, it could only be by virtue of the Wage Payment Act and, more specifically, by § 3–507.1(b).

If, in an action under subsection (a) of this section, a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs.

The appellant's contention that the award of attorney's fees was erroneous relies exclusively on the jury's verdict on the fifth of the issues submitted to it.

*Verdict Form:* **5. Were the wages to Mr. Clark withheld in violation of the law and not as a result of a bona fide dispute between the parties?**

*Verdict:* **No.**

We agree with the appellant that under § 3–507.1(b) neither enhanced damages may be awarded nor may the payment of attorney's fees and costs be shifted to the non-prevailing party for an ordinary violation of the Wage Payment Act. Section 3–507.1(b) only comes into play when the basic violation is aggravated by the additional factor that the employer withhold the payment of wages without an even plausibly good reason for having done so, to wit, "not as a

result of a bona fide dispute." In *Admiral Mortgage, Inc. v. Cooper,* 357 Md. 533, 546, 745 A.2d 1026 (2000), Judge Wilner noted the difference between a basic violation of the Wage Payment Law and an aggravated violation.

> Admiral views § 3–507.1(a) as establishing the private right of action by an employer to recover unpaid wages.... *Section 3–507.1(b),* however, *deals with penalties, not the basic right to recover the wages.*

(Emphasis supplied).

### The Separate Questions of What? and Who?

Under § 3–507.1(b), there are two types of questions calling for decision. There is the substantive question of, "What must be decided?" There is, quite distinctly, the procedural question of "Who shall do the deciding?" In terms of what must be decided, there are several different substantive questions:

1. Did the aggravating circumstance of the wages being withheld "not as a result of a bona fide dispute" occur so as to trigger the possibility of 1) enhanced damages and/or 2) the shifting of attorney's fees and/or costs?

2. If the triggering event occurred, in what amount, if any, should up to the treble damages be awarded?

3. If the triggering even occurred, in what amount, if any, shall the attorney's fees and/or costs be awarded?

As to each of these substantive questions, there is the further procedural question of who, in a jury trial, gets to answer each of those substantive questions, judge or jury. To fill the matrix of substantive and procedural combinations with definitive answers, the Maryland law has been at work for eight years. The effort began with *Admiral Mortgage v. Cooper, supra,* in 2000 and was followed by the succeeding stages of the *Friolo v. Frankel* saga: *Friolo v. Frankel,* 373 Md. 501, 819 A.2d 354 (2003) *("Friolo I ");* *Frankel v. Friolo,* 170 Md.App. 441, 907 A.2d 363 (2006) *("Friolo II ");* and *Friolo v. Frankel,* 403 Md. 443, 942 A.2d 1242 (2008) *("Friolo III ").*

Early on in the saga, it became clear that the substantive issue of in what amount to award enhanced damages, up to the level of treble damages, would be exclusively within the discretion of the jury. It was also clear, on the other hand, that the substantive issue of in what amount to award attorney's fees and/or costs to the prevailing party would be exclusively within the discretion of the trial judge. In *Admiral Mortgage v. Cooper*, as in this case, an employee successfully sued his employer for unpaid wages pursuant to §§ 3–505 and 3–507.1. The employee also sought, under § 3–507.1(b), "not only the unpaid commissions but also treble damages, attorney's fees, and costs." The jury awarded the employee almost treble damages plus $12,709 in attorney's fees. 347 Md. at 536, 702 A.2d 217.

The Court of Appeals held that although it was proper for the jury to have decided both 1) the occurrence of the triggering event for enhanced damages (the absence of a bona fide dispute) and also 2) the amount of the enhanced damages award, the jury should not have rendered any decision with respect to attorney's fees. Whether to make such an award and also the amount of the award were both within the exclusive province of the trial judge. Judge Wilner's opinion distinguished the question of enhanced damages and the question of attorney's fees.

> [T]here is a distinction to be drawn between the additional damages and an award of attorneys' fees (and costs) . . . . [T]he additional damages allowed under § 3–507.1(b) is neither required to be awarded nor fixed in amount. The plaintiff *may* be awarded an amount "not exceeding 3 times the wage." Not only is *any* award discretionary, but the amount that may be awarded is flexible, from zero up to three times the wage. *That kind of discretion is ordinarily committed to the trier of fact,* subject, of course, if the trier of fact is a jury, to the authority of the judge to order a remittitur. *Attorneys' fees and costs are another matter.* For one thing, they may continue to accrue after the verdict is rendered, if post-trial motions or appeals are filed, so the jury cannot determine them definitively. *Attorneys' fees, moreover, when allowed, have traditionally been set by the*

*judge, who is usually in a far better position than a jury to determine what is reasonable.*

357 Md. at 547–48, 745 A.2d 1026 (emphasis supplied).

The opinion elaborated on why the fee-shifting determination should be made by the trial judge rather than by a jury:

There are good reasons for having the judge, rather than a jury, determine the amount of fee to be paid by the losing party under a statutory fee-shifting provision.... Those factors are more judgmental than fact-based and are more apt to be within the expertise of a judge rather than of lay jurors.

... [A]lthough the discretionary additional damages is for the trier of fact to determine, the determination of attorneys' fees, and costs, is for the judge.

357 Md. at 552–53, 745 A.2d 1026.

In *Friolo I,* a jury found that an employer had failed to pay $6,841 in bonuses due to an employee and awarded compensatory damages for the unpaid wages. As in the case now before us, *the jury also found that enhanced damages should not be awarded.* Notwithstanding that decision by the jury, the trial judge subsequently ordered the employee to pay an award of $4,711 to the employee for attorney's fees. As does the appellant here, the employee protested that no award of attorney's fees was permitted because the jury had never pulled the fact-finding trigger.

Frankel responded that, as the jury failed to find that the withholdings were not the result of a bona fide dispute, there was no occasion for *any* attorneys' fee to be awarded.

373 Md. at 510, 819 A.2d 354. The employer elaborated:

Indeed, he reads LE § 3–507.1 as allowing the award of counsel fees only upon a finding that the withholding was not the result of a bona fide dispute which, he claims, was not made in this case. In his view, no fee was appropriate.

373 Md. at 511, 819 A.2d 354.

The Court of Appeals, however, found it unnecessary to resolve that particular issue and went on to decide the case on other grounds.

> *A fee was allowed here, and no cross-appeal was taken from that decision. That issue, therefore, is not before us,* either as legal error or abuse of discretion. The only issue is whether, in determining the amount of the fee, the court was required, as a matter of law, to use the lodestar approach and failed to do so.

373 Md. at 512, 819 A.2d 354 (emphasis supplied).

As the opinion then went on to consider the appropriate manner for computing the amount of an award of attorney's fees, the Court of Appeals summarized its earlier holding in *Admiral Mortgage v. Cooper.* Although we must be careful not to read too much into what may be nothing more than a random choice of words, the passage does seem to indicate that what is within the discretionary province of the trial judge is not only the "calculation of attorney's fees" but also the distinct threshold question of "the allowance ... of attorney's fees."

> We concluded that there *was* sufficient evidence to show a lack of bona fide dispute but that *the allowance and calculation of attorneys' fees was for the judge, not the jury, to determine.* In that latter regard, we drew a distinction between the allowance of enhanced damages and the allowance of attorneys' fees. *The discretion to allow enhanced damages,* we said, *was the kind of discretion ordinarily committed to the trier of fact but that attorneys' fees were another matter.*

373 Md. at 519, 819 A.2d 354 (emphasis supplied).

This Court did not have the opportunity in *Friolo II* to deal with the questions that concern us in this case, to wit, 1) "WHAT decisions are to be made pursuant to § 3–507.1?" and 2) "WHO is to make those decisions?" Our only concern in that case was with the question of, assuming a judge was going to make a fee-shifting award, "How should the amount of such an attorney's fee be properly computed?"

The Court of Appeals in *Friolo I* had remanded the case to the trial court so that the trial judge could calculate the attorney's fee award by using the so-called "lodestar" ap-

proach. On remand, the trial judge made an award of attorney's fees in the amount of $65,348, significantly in excess of what the judge's award of attorney's fees had been following the first trial. Following that award on remand, both parties appealed to this Court. We reversed the award of attorney's fees, holding that the trial judge, albeit having paid lip service to "lodestar," had not articulated his reasoning in sufficient detail to constitute an actual following of the "lodestar" approach. On appellee's cross-appeal, we held that the trial judge had properly refused to consider as part of a reasonable attorney's fee award any "compensation for appellate and post-remand services where the plaintiff's judgment has been satisfied and the sole issue on appeal was counsel's dissatisfaction with the amount of the trial court's fee award." 170 Md.App. at 452, 907 A.2d 363.

In *Friolo III,* the Court of Appeals then affirmed in part and reversed in part. It affirmed our decision that a remand was necessary because the trial judge, in computing the amount of the award, had not adequately followed the "lodestar" principles. It reversed our decision that post trial appellate attorney's expenses, even on the limited question of computing the fee, should not be included as part of a fee-shifting award. Although the holdings of *Friolo III* were literally confined to those two issues, the opinion nonetheless gave Chief Judge Bell the opportunity to range broadly over the § 3–507.1 terrain.

In terms of WHAT decisions needed to be made under § 3–507.1(b) and WHO was to make those decisions, what then was the lay of the land as we moved up toward *Friolo III?* All questions concerning enhanced damages are to be decided by the jury. The jury will decide 1) whether the aggravating circumstance of the absence of a bona fide dispute occurred so as even to trigger the possibility of an enhanced damages award; 2) if so, whether, in its discretion, to make such an award; and 3) if so, in what amount, up to treble damages, to make such an award.

With respect to the possible shifting of attorney's fees (for linguistic convenience, we will include costs with attorney's fees), by contrast, the terrain had only partially been mapped. It was clear that, if we assumed that the triggering event of the lack of a bona fide dispute had occurred, the ensuing decisions of 1) whether any shifting of attorney's fees should occur; and 2) if so, in what amount, using the "lodestar" approach, the shifted attorney's fee should be awarded would be entrusted to the discretion of the trial judge.

## An Unsettled Question

What remained unsettled with respect to attorney's fees was the question of WHO should decide whether the triggering event had occurred. Was the judge's decision on the very possibility of awarding attorney's fees dependent on what the jury had done with respect to the very possibility of awarding enhanced damages? Or was the judge completely autonomous in the area of attorney's fees, including on the threshold issue of the absence of a bona fide dispute. *Admiral Mortgage v. Cooper* and *Friolo II* had no occasion to address the issue. *Friolo I* recognized the issue but did not find it necessary to decide it. Judge Wilner's distinction, 373 Md. at 519, 819 A.2d 354, between the "calculation" of attorney's fees and the "allowance" of attorney's fees and his assignment to the judge of whether to "allow" an award of attorney's fees were nonetheless provocative.

The appellant not only does not argue this precise issue but does not seem even to recognize its existence as an issue. It simply confidently asserts, as an axiom not subject to question, that the judge, as a matter of course, is bound by the jury's decision with respect to the threshold question. *Friolo III*, however, was not so axiomatic.

### *Friolo III*

Whatever uncertainty existed on this issue has been cleared up by *Friolo III*. The issue of enhanced damages pursuant to § 3–507.1(b) had been submitted to the jury in *Friolo v. Frankel.* The jury did not find that the employer's withhold-

ing of the employee's wages was "not the result of a bona fide dispute." Accordingly, it did not award enhanced damages to the employee. By the appellant's reckoning, that circumstance would absolutely foreclose any possibility of an attorney's fee being awarded to the employee for the violation of the Wage Payment Law. The necessary trigger, such argument ran, had never been pulled.

The Court of Appeals in *Friolo III,* however, nonetheless remanded the case to the trial court for its independent determination of whether an award of attorney's fees to the employee should be made. Its very subtle rephrasing of what it had earlier said in *Friolo I* was prophetic.

As we noted in *Friolo I,* the allowance and determination of an enhanced damages award is a matter for the jury, while *the allowance* and determination *of an attorneys' fee award is a matter for the judge.* 373 Md. at 519, 819 A.2d at 365.

403 Md. at 457 n. 12, 942 A.2d 1242 (emphasis supplied).

■ Judge Bell very carefully set out the condition precedent that must be found for there to be an award of attorney's fees for a violation of the Wage Payment Law.

*The court's discretion is triggered* . . . under the Payment Law *upon the court's finding* "that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute." § 3–507.1(b).

403 Md. at 457, 942 A.2d 1242 (emphasis supplied). The only subject on remand is the awarding of attorney's fees, a subject in the exclusive domain of the trial judge. The triggering event for the exercise of "the court's discretion" is "the *court's* finding," not "the *jury's* finding."

The Court of Appeals's language in explaining its remand sternly alerts Friolo that she is by no means home free with respect to an award of attorney's fees for the violation of the Wage Payment Law. There is still a critical qualifying decision that will have to be made. The Court of Appeals is equally clear, however, that the possibility of awarding attorney's fees

is still an open question and one that will have to be decided by the trial judge alone.

> *Whether Friolo is entitled to an attorneys' fee award* under the Payment Law, however, is questionable, as the jury did not conclude that Frankel's failure to pay back wages was not due to a bona fide dispute and denied enhanced damages, and is *a matter for the Circuit Court to determine on remand, as part of its analysis under the lodestar approach.*

*Id.* (emphasis supplied).

Judge Bell's language that then follows, extolling the salutary purpose to be served by the fee-shifting provision, resounds with the expectation that such a purpose can yet be served in Friolo's case.

> *[T]he goal of fee-shifting statutes in general is to ensure that individuals, when injured by violations,* or threatened violations, *of certain laws, have access to legal counsel* by a "statutory assurance that [his or her counsel] will be paid a 'reasonable fee[.]' " (The purpose of the Maryland Wage and Payment Collection Law is "to provide a vehicle for employees to collect, and an incentive for employers to pay, back wages."). *Critical to the achievement of this goal* is providing a mechanism, here, *the fee shifting statute,* and an incentive, based on a realistic expectation of reasonable compensation, for attorneys to agree to take on wage dispute cases, even where the dollar amount of the potential recovery may be relatively small. "Hence, *if plaintiffs, such as [Friolo], find it possible to engage a lawyer based on [a fee-shifting statute], the purpose behind the fee-shifting statute has been satisfied."* Indeed, here, *Friolo was able to secure competent advice and representation from counsel for her wage dispute claims under* both *the Payment* and Wage *Laws, thereby satisfying the goal of those statutes.*

403 Md. at 457–58, 942 A.2d 1242 (emphasis supplied).

For present purposes, the appellee's hopes, under § 3–507.1(b), for an award of attorney's fees for the violation of § 3–505 was by no means precluded by the jury's finding that

the withholding of the wages was not done in the absence of a bona fide dispute.[3]

### The Necessity of a "Lodestar" Remand

 Although the appellee's hope for an award of attorney's fees may still be alive, it is nonetheless in need of serious resuscitation. On remand, the trial judge may determine that the withholding of wages "was not as a result of a bona fide dispute" and that the possibility of an award for attorney's fees remains properly on the table for further and more detailed consideration. The Court of Appeals was emphatic, however, that such a finding by the trial court would simply be "part of its analysis under the lodestar approach."

 On the question of awarding attorney's fees, the judge may have as many as three sub-questions to answer. There is first of all the triggering question of whether, in the judge's mind, the withholding of wages "was not as a result of a bona fide dispute." That is a finding of fact reviewable under the clearly erroneous standard. If the answer to that threshold question is in the affirmative, then, but only then, does the judge go on to question # 2, which is that whether to make an award of attorney's fees or not. That is distinct from question # 1. The threshold question (Question # 1) is whether the triggering event occurred that authorizes the judge to make a fee-shifting award in the first instance. Question # 2, by contrast, is that of whether the judge, even if authorized to do so, should or should not, under all of the circumstances and using the "lodestar" approach, actually make an award. That the judge can does not necessarily mean that the judge should. That determination is reviewable under the abuse of discretion standard. The judge is afforded wide discretion, but theoretically the judge could abuse that discretion either in making an award or in not making an award.[4]

---

**3.** The reference to a negative jury verdict as a finding that the withholding of wages was not "not as a result of . . . " is unbelievably awkward.

**4.** Questions # 1 and # 2 are so substantively intertwined that it may take a philosopher to distinguish them. A judge, however, might well

If the answer to both Question # 1 and Question # 2 is in the affirmative, then, but only then, does the judge confront Question # 3, which is that of in what amount to make an award of attorney's fees. That answer also, under "lodestar," is reviewable under the abuse of discretion standard.

This appeal is not a broad challenge to the award of attorney's fees under general "lodestar" principles as explicated by *Friolo I, Friolo II,* and *Friolo III.* We are not about to venture *nostra sponte* into questions that have not been raised or argued. The appellant relies exclusively on the legal argument that the jury's failure to find that the triggering event under § 3–507.1(b) occurred forecloses any such finding by the trial judge for his independent qualifying purposes.

Our holding to the contrary is that the trial judge is free to make such a qualifying determination for his purposes regardless of what the jury may have determined for its very different purposes. Our holding, however, is that the judge, before proceeding with an award for attorney's fees, will be required to make such an actual threshold determination. The clear message of all three *Friolo* cases, moreover, is that all lodestar determinations, including this one, must be expressly articulated in clear and certain terms. In this case, for instance, we do not know whether the trial judge erroneously awarded attorney's fees for the breach of promise or permissibly awarded attorney's fees for the violation of the Wage Payment Law. That will have to be expressly determined on remand. Even under the Wage Payment Law, moreover, an award of attorney's fees may not even be considered absent an affirmative threshold finding that the withholding of the wages "was not as a result of a bona fide dispute." On remand, moreover, the judge will be well advised to follow closely all three *Friolo* cases so as not to run afoul of the "lodestar" requirements in other respects as well.

---

determine, "I find that I am authorized to make an award; for the following reasons, however, I nonetheless deem it inappropriate to do so." That the judge does not make an award does not necessarily imply that the judge cannot make an award.

### Dismissal of the Counterclaim

The appellant's final contention will not detain us long. After the appellee had filed his claim in this case, the appellant filed a counterclaim for 1) breach of promise, 2) trespass, and 3) conversion. At the conclusion of all of the evidence, the judge granted the appellee's motion to dismiss the counts charging conversion and trespass. He declined, however, to dismiss the count of the counterclaim charging breach of contract. That count went to the jury, but the jury found there had been no breach of contract by the appellee. That matter is now off the table.

The appellant's claims of trespass and conversion are based on its allegation that at some time in the spring of 2005, at about the time the appellee was deciding to terminate his employment or shortly after he terminated his employment, the appellee accessed his "Dictran e-mail account," a computer service subscribed to by the appellant. The president of the appellant employer testified that when he examined the appellee's e-mail file, probably in February of 2005, it contained "all of his correspondence with all the existing and potential leads, hundreds and hundreds of e-mails." He further testified that when he checked the same e-mail account on or about April 10, 2005, it showed that the appellee had deleted his e-mail correspondence. His testimony was:

A This is what I printed off—

Q It's a two-page document, correct?

A Yeah.

Q What's the first page?

A It's a list of what he left in his e-mail account after his last day.

Q Okay. Well, let me ask you this. Did you go and access Mr. Clark's e-mail account or Dictran after he left the job?

A Yes.

Q When was that?

A I think April 10th.

Q What did you find in Mr. Clark's e-mail account?

A Everything had been deleted and there was something called a trash bucket that had hundreds of e-mails in a folder called trash.

When the appellee's motion to dismiss was being argued at the conclusion of the trial, the appellant's argument that the facts established a trespass was legally unenlightening.

MR. QUINN: [T]he testimony to date has been that he entered the company's computer system on May 10, 2005. *That is a trespass.*

THE COURT: *Well, is there any case that says that?*

MR. QUINN: *I don't know of any case that does.*

. . . .

MR. QUINN: I, again, I don't have case authority that I can give you here today.

(Emphasis supplied).

 Quite aside from the very serious question of whether the appellee's deletion from the files of his own e-mail correspondence constitutes either a trespass or a conversion, there was no evidence presented as to damages. The appellant's argument as to damages was purely speculative.

THE COURT: Now move to the value issue, the damages question.

MR. QUINN: Well, certainly the value, I think the argument could be made if they do, in fact, go to Mr. Clark's salary, that that's the value of what his salary is the value of what he destroyed. He rendered his performance useless because he took his entire work product when he left. He destroyed it.

. . . .

MR. QUINN: If they owe him salary, that's the value of our damages.

The trial court ruled that even if the other hurdles could be surmounted, the evidence as to damages was rank speculation.

Assuming arguendo that the Court did agree with you on what the evidence shows, *damages would be clearly speculative.* And *the jury is simply not permitted* in the State of Maryland *to speculate as to what damages would* be in any kind of case, whether it's breach of contract, whether it's a vehicular tort, any kind of case. A jury in Maryland is not permitted to speculate on what the damages would be. And *you simply would be unable to prove up damages* in light of the fact that there is not, *it's really not known with certainty exactly what it was that was put in that trash bucket,* except we know that it was done while he was in the employment, in some fashion or another, of, with the company.

(Emphasis supplied).

We see no error in the dismissal of the counts of the counterclaim charging trespass and conversion.

**AWARD OF ATTORNEY'S FEES VACATED AND RE-MANDED TO CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER CONSIDERATION; JUDGMENT IN ALL OTHER RESPECTS AFFIRMED; COSTS TO BE DIVIDED EQUALLY BETWEEN APPELLANT AND APPELLEE.**